**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 23-cr-3 (RCL)** |
| **v.** | : | |
| | : | |
| **ZACHARIAH SATTLER,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Zachariah Sattler to 60 days of incarceration, 36 months of probation, 60 hours of community service, and $500 in restitution.

### I.    Introduction

Defendant Sattler participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.[1]

Sattler pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). As explained herein, a sentence of incarceration is appropriate in this case because the defendant (1) eagerly joined the siege of the Capitol, encouraging other rioters to join the attack with rallying cries such

---

[1] Although the Statement of Offense in this matter, filed on March 31, 2023, ECF No. 19 ¶ 6) reflects a sum of more than $2.7 million dollars for repairs, as of October 17, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $2,881,360.20. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

as, "they dones bustin' through the gate, we're going to the motherfucking Capitol Building!"; (2) after breaching the Capitol's East Rotunda Doors, urged other members of the mob to penetrate deeper into the building; (3) smoked marijuana in the Capitol Rotunda; (4) spent over 20 minutes inside; and (5) has a criminal history.

The Court must also consider that Sattler's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Indeed, Sattler often served as a poignant voice for the mob, frequently shouting in celebration and encouraging other rioters as he roamed through the halls of the Capitol. Here, the facts and circumstances of Sattler's crime support a sentence of 60 days of incarceration, 36 months of probation, 60 hours of community service, and $500 in restitution in this case.

## II.      Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 19 (Statement of Offense), ¶¶ 1–7.

### Defendant Sattler's Role in the January 6, 2021 Attack on the Capitol

Sattler traveled from his home in Chestertown, Maryland, to attend the "Stop the Steal" rally in support of former President Trump on January 6, 2021. After attending the rally, Sattler began walking to the Capitol. Sattler took multiple videos of his progress from the rally to the Capitol Building.

As he approached the Capitol's restricted grounds, Sattler remarked that he wanted to "go hang out with the Proud Boys for a minute" and "there's that bitchass Capitol Building with all them dirty motherfuckers in it." *See* Exhibit 1. As Sattler passed "Area Closed" signs and stepped

over fallen bike rack barriers, he shouted, "You better know what side you stand on!" "We built this, motherfuckers!" and "they dones bustin' through the gate, we're going to the motherfucking Capitol Building!" *See* Exhibit 2. As Sattler proceeded onto the Capitol's west lawn, he also shouted, "Eat the grass!" *Id.* He then joined the mob growing against a thin line of police at the Capitol's West Plaza. *See* Exhibit 3.

Sattler then moved to the Capitol building's East Front. As he reached the east side of the Capitol, Sattler recorded himself wondering out loud whether he'd be on the news. Sattler then pushed with the mob towards the East Rotunda Doors, chanting and shouting prolifically along the way. *See* Exhibit 4. Sattler then filmed himself eating Capitol grass. *See* Exhibit 5. He then filmed himself at the top of the exterior steps leading to the East Rotunda Doors—shouting in triumph and bragging about throwing up on the Capitol. *See* Exhibit 6. At one point, Sattler attempted to intimidate police by screaming at them to "GO HOME! GO HOME!" *See id.*

Sattler, without authority, entered the U.S. Capitol Building through the East Rotunda Doors at approximately 2:40 p.m. Once inside, Sattler shouted and gestured to the crowd, urging rioters to move further inside the Capitol Building. *See* Images 1, 2, 3, and 4.

 

*Image 1*          *Image 2*


*Image 3*


*Image 4*

Sattler wandered through the Rotunda for about two minutes before entering Statuary Hall.

Sattler kneeled in front of the Nebraska statue, *see* Image 5, and helped another rioter take a picture

in front of the statute, *see* Image 6.



*Image 5*                    *Image 6*

Two minutes later, Sattler entered the Statuary Hall Connector. He continued to gesture in

a celebratory manner, drank water from a bottle pulled from the floor against the wall, then walked

back toward Statuary Hall. *See* Image 7.



*Image 7*

About five minutes later, Sattler reentered the Rotunda. He raised his arms in celebration then bent down to kiss the floor. Sattler then walked around the Rotunda and into adjacent hallways for about the next ten minutes. At approximately 3:00 p.m., Sattler took several puffs from a joint offered by another rioter. *See* Image 8.



*Image 8*

Sattler continued raising his arms in celebration before looking into a hallway where police were assembling in order to clear rioters from the Rotunda. Sattler then moved away from the police, and, at approximately 3:02 p.m., walked back to the East Rotunda Door. But before exiting, Sattler waved other rioters into the building and helped pull several of them inside. *See* Image 9.



*Image 9*

At points after January 6, 2021, Sattler bragged about his presence at the Capitol to others, specifically noting that he smoked marijuana while inside the Capitol. At some point, Sattler also saved a screenshot image to his Google account of an Instagram post that made light of January 6 and some of its famous rioters. *See* Image 10.



Image 10

*The Charges and Plea Agreement*

On December 9, 2022, the United States charged Sattler by criminal complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). Sattler was arrested on December 13, 2022. On January 4, 2023, the United States charged Sattler by a four-count Information with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On March 30, 2023, pursuant to a plea agreement, Sattler pleaded guilty to Count Four

of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, Sattler agreed to pay $500 in restitution to the Architect of the Capitol.

### III.    Statutory Penalties

Sattler now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. The defendant must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 60 days of incarceration, 36 months of probation, 60 hours of community service, and $500 in restitution.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Sattler's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Sattler, the absence

of violent or destructive acts is not a mitigating factor. Had Sattler engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Sattler's case is his consistent encouragement of other rioters as he joined the violent mob that sieged the Capitol. As he approached the Capitol grounds, Sattler drew energy from the crowd, and returned it in the form of encouragement—celebrating their accomplishment of entering restricted grounds, defying police officers, and threatening the seat of Congress. Sattler's contempt for the government manifested itself in egregious behavior—he tore grass up from the Capitol Grounds and devoured it, made himself throw up on the Capitol steps, and smoked marijuana in the Rotunda. Even as he departed the building, he urged other rioters to enter the building and carry on in his place.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B.  The History and Characteristics of Sattler

Sattler's crimes at the Capitol were not an isolated event in an otherwise spotless background. As set forth in the PSR, Sattler's criminal history consists of (1) a 2006 arrest with subsequent conviction in Maryland for Possession with Intent to Distribute, for which Sattler was eventually sentenced to 6 months imprisonment with all but 3 months and 22 days suspended and unsatisfactorily completed a three-year probation term and (2) a 2011 charge and subsequent conviction for possession of marijuana, for which Sattler was sentenced to a 45-day suspended sentence that he ultimately served due to violating probation. The 2006 Possession with Intent to Distribute arrest involved 456.44 grams of marijuana with a street value of $13,690.00. PSR ¶ 25. Regarding that charge, the defendant was unsuccessfully discharged from three substance abuse programs over a three-year period. *Id.*

Despite his prior drug-related convictions in Maryland, Sattler reports occasional marijuana use. *Id.* ¶ 41. Indeed, Sattler tested positive for marijuana during a June 1, 2023 home inspection. *Id.* ¶ 43. Sattler claimed he uses marijuana to treat post-traumatic stress disorder, yet he "denied having mental health issues during the presentence interview."  *Id.*

Unlike many defendants, Sattler has no history of abuse or a difficult upbringing which might explain his decision to engage in criminal conduct.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

 The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be

deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. *See United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, then people will say why not do it again."). This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Sattler's conduct at the Capitol, prior convictions, and prior history of probation failure suggest that he holds little regard for the law and authorities. Moreover, despite a prior felony conviction, the FBI seized multiple firearms from Sattler's residence during the execution of a search warrant served at the time of Sattler's arrest, including an unserialized AR-style lower receiver and accompanying parts.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence Sattler based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Sattler has pleaded guilty to Count Four of the Information, charging him with violating 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C.

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

§ 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

"Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). "[A] defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." Consequently, Section 3553(a)(6) neither prohibits nor requires a sentencing court "to consider sentencing disparity among codefendants." *Id.* Plainly, if Section 3553(a)(6) is not intended to establish sentencing uniformity among codefendants, it cannot require uniformity among all Capitol siege defendants charged with petty offenses, as they share fewer similarities in their offense conduct than codefendants do. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Tr. at 48-49 ("With regard to the need to avoid sentence disparity, I find that this is a factor, although I have found in the past and I find here that the crimes that occurred on January 6 are so unusual and unprecedented that it is very difficult to find a proper basis for disparity.") (statement of Judge Chutkan)

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several

factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. It follows that a sentencing court in a Capitol siege petty offense case is not constrained by sentences previously imposed in other such cases. *See United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. For that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences. The statutory range of for a petty offense is zero to six months. Given that narrow range, a sentence of six months, at the top of the statutory range, will not create an unwarranted disparity with a sentence of probation only, at the bottom. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr. at 23-24 ("The

government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson); *United States v. Dresch*, D.D.C. 21-cr-71 (ABJ), Aug. 4, 2021 Sent. Hrg. Tr. at 34 ("Ensuring that the sentence fairly reflects where this individual defendant falls on the spectrum of individuals arrested in connection with the offense has largely been accomplished by the offer of the misdemeanor plea because it reduces his exposure substantially and appropriately.") (statement of Judge Berman Jackson); *United States v. Peterson*, D.D.C. 21-cr-309, Sent. Hrg. Tr. at 26 (statement of Judge Berman Jackson) (similar).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Rader*, 22-cr-57 (RCL), the defendant entered the U.S. Capitol through the Senate Wing Door early in the riot and remained for about 3 minutes, a small fraction of the time Sattler spent inside the building. Unlike Sattler, Rader did not smoke pot, or make himself throw up on the Capitol, though Rader violated the terms of his pretrial release while his case was pending and had a criminal history. This Court sentenced Rader to 90 days of incarceration.

In *United States v. Mazzio*, 22-cr-214 (RCL), the defendant, wearing body armor and a gas mask, entered the Capitol despite seeing tear gas and other measures used by the police against rioters. Mazzio entered through the Senate Wing Door and spent approximately one hour inside in the Capitol. He made statements regarding the need to "take a stand" and wanting "these people

to be held accountable" and demonstrated a lack of remorse during a post-arrest interview. While Mazzio had some law enforcement encounters as a juvenile, he did not have an adult criminal history, unlike Sattler. The Court sentenced Mazzio to 60 days of incarceration.

In *United States v. Holdridge*, 21-cr-729 (RBW), the defendant, like Sattler, entered the Capitol Grounds despite seeing the plastic fencing and barricades, as well as law enforcement officers dressed in full riot gear. Holridge climbed a railing at the north exterior staircase to the Upper West Terrace, entered the building through the Senate Fire Door, sat in a chair at a desk in the Parliamentarian's Office, photographed other rioters, and spent a total of five minutes in the building. Holdridge also had a criminal history, albeit more extensive than Sattler's. The Court sentenced Holdridge to 60 days of incarceration.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.[3]

---

[3] Numerous judges of this Court have concluded that a sentencing court in a case involving a violation of a Class B misdemeanor under 40 U.S.C. § 5104 may impose a "split sentence" – a period of incarceration followed by a period of probation – for defendants convicted of federal

## V.      Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss

_____

petty offenses. See, e.g., 18 U.S.C. § 3561(a)(3); *see, e.g., United States v. Little*, 21-cr-315 (RCL), 2022 WL 768685, at *1 (D.D.C. Mar. 14, 2022) (concluding that "a split sentence is permissible under law and warranted by the circumstances of this case"); *see generally* Appellee's Brief for the United States, *United States v. Little*, No. 22-3018 (D.C.) (filed Aug. 29, 2022). Approximately nine judges of this district have authorized and imposed such split sentences pursuant to law. *But see United States v. Panayiotou*, No. 22-CR-55 (DLF), 2023 WL 417953 (D.D.C. Jan. 25, 2023) (holding that such sentences are impermissible under Section 3561(a)(3)).

In the alternative, courts have also issued sentences under 18 U.S.C. § 3563(b)(10), which authorizes limited periods of intermittent confinement as a condition of probation. The courts have consistently found that such a sentence is permissible for up to two weeks' imprisonment served in one continuous term. *See, e.g., United States v. Mize*, No. 97-40059, 1998 WL 160862, at *2 (D. Kan. Mar. 18, 1998) (quoting Section 3563(b)(10)'s legislative history in interpreting the term to mean a "brief period of confinement, e.g., for a week or two, during a work or school vacation," described above and reversing magistrate's sentence that included 30-day period of confinement as a period condition of probation). To this end, at least four of the judges of this Court have imposed sentences under §3563(b)(10). Indeed, a sentencing court may also impose multiple intervals of imprisonment under §3563(b)(1). *See United States v. Anderson*, 787 F. Supp. 537, 539 (D. Md. 1992); *Panayiotou*, 2023 WL 417953, at *9 ("in a case in which the government exercises its prosecutorial discretion to allow a defendant to enter a plea to a single petty misdemeanor, it can request that a court impose a sentence of intermittent confinement as a condition of probation.") (citing 18 U.S.C. § 3563(b)).

In this district, at least two judges have similarly imposed multiple terms of imprisonment, to be served intermittently, consistent with this subsection. Such sentences are particularly appealing in light of the fact that it has been nearly three years since the World Health Organization first declared the COVID-19 outbreak a global pandemic in March 2020, and over two years since the first COVID-19 vaccine was administered in the United States in December 2020, allowing detention facilities to now more safely handle the logistical and practical concerns associated with multiple stints of imprisonment.

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense

caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Sattler must pay $500 in restitution, which reflects in part the role Sattler played in the riot on January 6.[5] As clarified above, the riot at the United States Capitol caused approximately $2,881,360.20 in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of October 2022. Sattler's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities.

---

against property … including any offense committed by fraud or deceit," and any offense "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[5] Unlike under the Sentencing Guidelines for which the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VI.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Sattler to 60 days of incarceration, 36 months of probation, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Nathaniel K. Whitesel*
Assistant United States Attorney
DC Bar No. 1601102
601 D Street NW
Washington, DC 20530
nathaniel.whitesel@usdoj.gov
(202) 252-7759